[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SET ASIDE VERDICT AND FOR NEW TRIAL
The plaintiffs in the instant action have moved to set aside the jury verdict that was rendered after trial. They base their motion on the following four grounds:
 1. The jury could not reasonable and legally have returned a verdict for the defendant as to both plaintiffs with respect to the first fire which occurred on December 7, 1997 based on the Answer and Special Defenses of the defendants dated June 26, 2002 and the jury instructions.
 2. Although the parties and the Court in good faith believed that an alternate juror could be seated in the place of a juror who was excused after the jury deliberations had begun and proceeded for approximately four (4) hours, in fact, the procedure is not permitted under Section 51-243 (e) of the Connecticut General Statutes.
 3. Assuming arguendo, that the alternate juror was properly seated, the newly constituted jury must have disregarded the Court's instructions to start deliberations afresh because they returned their verdict in approximately two and one half (2 1/2 hours) when they had not been able to reach a verdict in approximately four (4) hours on the preceding day of deliberation before the juror was excused.
 4. The verdict was against the weight of the evidence.
CT Page 1204
 Standard of Review
Our state's Supreme Court has identified a standard for setting aside a verdict:
 The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence. O'Brien v. Seyer, 183 Conn. 199, 208, 439 A.2d 292 (1981). "The supervision which a judge has over the verdict is an essential part of the jury system. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they or some of them were influenced by prejudice, corruption or partiality." Burr v. Harty, 75 Conn. 127, 129, 52 A. 724 (1902). The court has a duty to set aside the verdict where the jury's action is so unreasonable as to suggest that it was the product of such improper influences. State v. Avcollie, 178 Conn. 450, 457, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S.Ct. 667, 62 L.Ed.2d 645 (1980), aff'd, 188 Conn. 626, 453 A.2d 418
(1982), cert. denied, 461 U.S. 928, 103 S.Ct. 2088, 77 L.Ed.2d 299 (1983); Roma v. Thames River Specialties Co., 90 Conn. 18, 19-20, 96 A. 169 (1915). A verdict may be set aside even if the evidence was conflicting and there was direct evidence in favor of the party who prevailed with the jury. Roma v. Thames River Specialties Co., supra, 20.
 Palomba v. Gray, 208 Conn. 21, 23 (1988).
 1. The jury could not reasonable and legally have returned a verdict for the defendant as to both plaintiffs with respect to the first fire which occurred on December 7, 1997 based on the Answer and Special Defenses of the defendants dated June 26, 2002 and the jury instructions.
The plaintiffs assert that "each of the applicable special defenses to CT Page 1205 the First Count, which was based upon the first fire that occurred on December 7, 1997, implicates the conduct of only one of the two plaintiffs, namely Kostas Stivachtis." They further assert that "none of the special defenses, which the defendants had the burden of proving, is the conduct of Rita Stivachtis implicated." The plaintiffs therefore assert that the jury could not have reasonably and legally render a defendants' verdict against her interest as an innocent spouse.
However, the defendants assert that the jury instructions that were actually given to the jury were in pertinent part as follows:
 FIRST SPECIAL DEFENSE: ". . . In addition, if you find that Kostas Stivachtis did intentionally set the fire for the purpose of making a claim under the policy and also find that Rita Stivachtis had nothing to do with setting the fire, then coverage still exists for her as an insured under the policy"
 SECOND SPECIAL DEFENSE: ". . . In addition, if you find that Kostas Stivachtis did intentionally set the fire for the purpose of making a claim under the policy and also find that Rita Stivachtis did not commit or direct any act with the intent to cause a loss, then coverage still exists for her as an insured under the policy."
 THIRD SPECIAL DEFENSE: ". . . If you find Kostas Stivachtis did intentionally conceal or misrepresent material (s) or [facts] provided false information or made false statements for the purpose of making a claim under the policy and also find that Rita Stivachtis did none of those things, then coverage still exists for her as an insured under the policy"
The foregoing jury instructions concerning the defendants' special defenses clearly address the actions and the plaintiff Rita Stivachtis. They also provide legal instruction to the jury as to what they must find in order to render a verdict in her favor. The cited jury instructions were submitted to the Court by the plaintiffs in this matter and were not objected to by the moving parties in this motion.
By failing to take an exception to the court's charge to the jury, the plaintiff accepted the instructions as the law of the case. Lengel v. New Haven Gas Light Co., 142 Conn. 70, 77, 111 A.2d 547
CT Page 1206 (1955). "The jury were bound to follow the court's instructions and to bring in a verdict for the plaintiff consistent with them, or a verdict for the defendants." Rosenblatt v. Berman, 143 Conn. 31, 37, 119 A.2d 118 (1955).
A-C Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 212 (1990).
The plaintiffs correctly point out that the defendants' Special Defenses do not address the of Rita Stivatchis' involvement in the December 7th fire.
The defendants, Travelers has requested "to the extent that the Court believes that the variance noted by Plaintiffs is material, Travelers requests that its Special Defenses to Count One be amended to add Mrs. Stivachtis.
Pleadings may be amended before, during and after trial. All AmericanPools v. Lato, 20 Conn. App. 625, 629 (1990). The Court finds that there was evidence presented at trial concerning her activities as they relate to said fire. The Court further finds that the Jury Instructions that were requested by the Plaintiffs and accepted by the Court also establish the issue of Mrs. Stivachtis activities concerning the first fire as a part of this trial. There is a variance between the proof at trial and the defendants Special Defenses, the plaintiffs will not be not be prejudiced by the granting of said motion and it is therefore granted.
 2. Although the parties and the Court in good faith believed that an alternate juror could be seated in the place of a juror who was excused after the jury deliberations had begun and proceeded for approximately' four (4) hours, in fact, the procedure is not permitted under Section 51-243 (e) of the Connecticut General Statutes.
Before the jury was charged in this matter, the Court had a discussion with the parties outside the presence of the jury concerning what to do with the alternate jurors upon completion of the charge. At that time the Court expressed is concern that due to the length of trial and the potential length of the deliberations there might be problems with keeping the jury together and therefore it would like to hold on to the alternates.
During the course of jury deliberations the Court was informed that one of the jurors could not continue to deliberate. The subject juror was CT Page 1207 brought into the courtroom outside of the presence of the other jurors. Counsel for the plaintiffs and the defendants were present. The juror was questioned at length concerning the issue of whether she could continue in the process. Upon the Court completing its examination of the juror she was excused. The Court then, outside of the presence of all of the jurors discussed the matter with all counsel as to how they wished to proceed.
Upon completing discussions of various remedies, including: 1) the Court declaring a mistrial; or 2) proceeding with a panel of five jurors; or 3) replacing the juror with one of the alternates. Upon completing its discussion with the parties, it instructed the clerk to pick one of the alternates by lottery. Upon completing this process, the chosen alternate was contacted by the clerk. It should be noted that at the conclusion of the Charge in this matter the Court did not excuse the alternates, but informed them that they should continue to adhere to the rules of jury conduct for reason that in the event of an emergency they would be called back to participate in the deliberations.
Although the alternate could not return to court that same day, when he did return he was sworn in as a juror and the jury was instructed to start their deliberations anew.
The plaintiff now assert that although the parties and the Court in good faith believed that they could replace the excused juror with an alternate after the deliberations began, that in fact § 51-243 (e) of the Connecticut General Statutes.
Section 51-243 of the Connecticut General Statutes concerns alternate jurors in civil cases. Subsection 51-243 (a) provides that:
 In any civil action to be tried to the jury in the Superior Court, if it appears to the court that the trial is likely to be protracted, the court may, in its discretion, direct that, after a jury has been selected, two or more additional jurors shall be added to the jury panel, to be known as "alternate jurors".
Section 51-243 (e) provides that:
A juror selected to serve as an alternate shall not be segregated from the regular panel except when the case is given to the regular panel for deliberation at which time he shall be dismissed from further service on the case. CT Page 1208
The plaintiffs cite State v. Murray, 254 Conn. 472 (2000), to support their assertion that an alternate juror can not replace a juror once deliberations have begun. Murray, Id., however is distinguishable from the case at bar. In Murray, the criminal defendant was opposed to the seating of an alternate juror. In the case at bar, the plaintiffs not only did not object to the retention of the alternates and the placement of one of them on the jury, they fully participated in the process and explicitly rejected the alternatives of proceeding with five jurors or the declaration of a mistrial.
 "We have referred to the policy reasons underlying the preservation requirement on several occasions. The policy serves, in general, to eliminate the possibility that: (1) claims of error would be predicated on matters never called to the attention of the trial court and upon which it necessarily could have made no ruling in the true sense of the word; and (2) the appellee . . . would be lured into a course of conduct at the trial which it might have altered if it had any inkling that the [appellant] would . . . claim that such a course of conduct involved rulings which were erroneous and prejudicial to him.
 Willow Springs Condo. Ass'n, Inc. v. 7th Brt Dev. Corp.,245 Conn. 1, 48 (1998).
In the instant action, the Court and the parties all took a particular course of action based on the fact that there were no objections from either party to proceeding in a particular manner. Had there been such an objection a different course of action may have been taken.
 3. Assuming arguendo, that the alternate juror was properly seated, the newly constituted jury must have disregarded the Court's instructions to start deliberations afresh because they returned their verdict in approximately two and one half (2 1/2 hours) when they had not been able to reach a verdict in approximately four (4) hours on the preceding day of deliberation before the juror was excused.
The plaintiffs assert that the jury must have disregarded the Court's instruction to start deliberations afresh because they returned their verdict in two and one half hour after they had not come to a verdict in the previous four hours of deliberation. However the Court gave the jury CT Page 1209 very explicit instructions that they were to begin deliberations all over again and went into great detail on this point. Other then the timing of the verdict, the plaintiffs do not offer any evidence that the jury did not comply with said instructions.
"It is a fundamental principle that jurors are presumed to follow the instructions given by the judge . . .
State v. Ramos, 261 Conn. 156, 167 (2002).
 4. The verdict was against the weight of the evidence.
 "A court is empowered to set aside a jury verdict when, in the court's opinion, the verdict is contrary to the law or unsupported by the evidence. . . . A verdict should not be set aside, however, where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion." (Citation omitted; internal quotation marks omitted.) PAR Painting, Inc. v. Greenhorne O'Mara, Inc., 61 Conn. App. 317, 322, 763 A.2d 1078, cert. denied, 255 Conn. 951, 770 A.2d 31 (2001).
 IPACS v. Cranford, 65 Conn. App. 441, 444 (2001).
The jury in this matter heard testimony concerning the actions of the plaintiffs for time periods around the time of the occurrences of the fires that are the subject of this lawsuit. The evidence that was presented to the jury indicated that some of these activities could have been reasonably considered to be unusual and indicate that the plaintiffs were in fact involved in the setting of the subject fires. The jury also heard evidence concerning the plaintiffs' financial difficulties. It heard evidence about the presence of a kerosene type material being present on the floor joist in the burn area in the house.
In passing upon a motion to set aside a verdict, the trial judge must do just what every juror ought to do in arriving at a verdict. The juror must use all his experience, his knowledge of human nature, his knowledge of human events, past and present, his knowledge of the motives which influence and control human action, and test the evidence in the case according to such knowledge and render his verdict accordingly. . . . The trial judge in considering the CT Page 1210 verdict must do the same . . . and if, in the exercise of all his knowledge from this source, he finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance . . . prejudice, corruption or partiality, then it is his duty to set aside that verdict and to grant a new trial.
Birgel v. Heintz, 163 Conn. 23, 27 (1972)
Viewing the totality of the evidence that was presented at trial this Court finds that it cannot find that "the verdict is so clearly against the weight of the evidence so as to indicate that the jury did not correctly apply the law to the facts in this case" or that there decision was governed by improper motives.
For all of the foregoing reasons, the defendants' Motion to Amend their Special Defenses is granted, the plaintiffs Motion to Set Aside and for New Trial is denied.
___________________ Richard A. Robinson, J January 18, 2003 CT Page 1211